33 F.3d 52
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SUGARLOAF CITIZENS ASSOCIATION; Audubon Naturalist Society
of the Central Atlantic States; Dickerson-Beallsville
Coalition; Kenneth Cox; Tracey Morgan; Gayle Morgan;
Jane Hunter; J. Houston Miller; John Snitzer; Karen
Kalla; Beverly Thomas, Plaintiffs-Appellants,
v.
MONTGOMERY COUNTY, MARYLAND; Northeast Maryland Waste
Disposal Authority, Defendants-Appellees.
 No. 93-2475.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1994.
Decided August 17, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, District Judge. (CA-93-1023-WN)
 Mick G. Harrison, Government Accountability Project, Washington, D.C., for appellants.
 Deborah Eileen Jennings, Piper & Marbury, Baltimore, MD, for appellees.
 Richard E. Condit, Washington, DC, for appellants.
 Roger D. Redden, Piper & Marbury, Baltimore, MD, for appellee Northeast Maryland Waste Disposal Authority.
 Joyce R. Stern, County Attorney, A. Katherine Hart, Senior Asst. County Atty., Diane R. Schwartz Jones, Associate County Atty., Rockville, Maryland, for appellee Montgomery County.
 D.Md.
 AFFIRMED.
 Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 In this appeal, we review the propriety of the district court's invocation of the Burford[1] abstention doctrine to avoid federal judicial interference in ongoing proceedings under a complex state regulatory scheme, and the court's attendant dismissal of the complaint. Finding no error, we affirm. However, because the dismissal order should not operate as an adjudication on the merits, we amend the dismissal order to reflect that the dismissal is without prejudice.
 
 I.
 
 2
 This controversy centers around a partially completed resource recovery waste-to-energy incinerator facility in Montgomery County, Maryland (the "County"). The facility is being built by the County and the Northeast Maryland Waste Disposal Authority ("NMWDA"), and is designed to dispose of municipal solid waste while generating electricity, which may then be sold to a utility. The Maryland Department of the Environment ("MDE") issued the requisite "Permit to Construct" and "Refuse Disposal Permit" to the County and NMWDA in February 1993. Construction on the facility began in March 1993, and completion is targeted for 1995.
 
 
 3
 Since 1988, the Sugarloaf Citizens' Association ("Sugarloaf"),[2] a community environmental organization with members throughout Montgomery County, has spearheaded efforts to insure strict compliance with regulations governing the construction and operation of such waste facilities. To that end, Sugarloaf has engaged in an extensive campaign, using the procedures outlined in the State's comprehensive regulatory scheme, to challenge the permits issued for the facility. Sugarloaf's efforts have included the presentation of adverse testimony at every public hearing on the County's solid waste management options and on the issuance of various environmental permits, the initiation of a month-long adjudicatory hearing before a state administrative law judge ("ALJ") about the propriety of the permits' issuance,[3] the filing of objections with the Secretary of MDE to the ALJ's recommendation of permit issuance, the presentation of briefs and oral argument before the Secretary, a motion for reconsideration of the Secretary's acceptance of the ALJ's recommendation, and an appeal of MDE's decision to the Circuit Court for Montgomery County.
 
 
 4
 On April 7, 1993, twelve days after noting its appeal of MDE's decision to the Maryland Circuit Court, Sugarloaf filed this action in federal district court, pursuant to the federal citizen suit provisions of the Clean Air Act ("CAA"), 42 U.S.C.A. Sec. 7604(a)-(f) (West 1983 & Supp.1994), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Sec. 6972(a)-(g) (West 1983 & Supp.1994). The four-count complaint alleged the same claims previously adjudged in the state administrative proceedings and on appeal before the Montgomery County Circuit Court: Count I, inadequate ozone-forming pollutant emission offsets in violation of the 1990 CAA amendments; Count III, failure to "size" the facility for adequate recycling under RCRA; and Count IV, Appellees' failure to include source separation, waste reduction, and recycling as part of their best available control technology analysis. The complaint also included a state law cause of action for nuisance, Count II. According to Sugarloaf, these alleged violations of federal statutes require invalidation of the Permit to Construct and the Refuse Disposal Permit issued by MDE. Sugarloaf also contends that the federal statutes compel the use of pollution control technologies not contemplated by the permits, as well as the performance of certain tests and demonstrations prior to any subsequent permit issuance for that facility.
 
 
 5
 The County and NMWDA moved to dismiss the complaint. Relying on Burford and this Court's decision in Palumbo v. Waste Technologies Indus., 989 F.2d 156 (4th Cir.1993), the district court found that Sugarloaf's "cause of action is a collateral challenge to the permitting decisions of the Maryland state environmental agencies," and abstained in favor of the proceedings still pending before the Montgomery County Circuit Court. (J.A. at 92.) The complaint was dismissed, and Sugarloaf filed a timely appeal to this court.
 
 
 6
 On February 10, 1994, approximately four months after the district court dismissed the federal complaint and three months prior to oral argument before this panel, the Montgomery County Circuit Court dismissed Sugarloaf's appeal of MDE's permitting decision for lack of standing. An appeal of that dismissal is presently before the Maryland Court of Special Appeals.
 
 II.
 
 7
 This court is obligated to consider cases and controversies properly placed before it. U.S. Const. art. III, Sec. 2. "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction...." Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 (1909). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821).
 
 
 8
 Nevertheless, there are qualifications to this principle, certain limited circumstances in which this " 'virtually unflagging obligation' "[4] is averted in order to prevent unwarranted federal interference in state interests. See generally 17A Charles A. Wright et al., Federal Practice and Procedure Sec. 4241 (2d ed.1988). These circumstances, referred to as the abstention doctrines, are "the exception, not the rule, and can only be justified in exceptional cases." Neufeld v. City of Baltimore, 964 F.2d 347, 349 (4th Cir.1992). It is the application of the Burford abstention doctrine that we examine here.
 
 
 9
 In Burford, the Sun Oil Company instituted a federal action challenging the decision of the Texas Railroad Commission to allow Burford drilling rights on a small plot of land in an East Texas oil field. The permits were issued under a complicated regulatory system established under Texas law in furtherance of that State's substantial policies and interests in the conservation of its oil and gas resources. Because "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy, are the inevitable product of [the] double system of review" created by the exercise of federal jurisdiction, the Court concluded that "a sound respect for the independence of state action requires the federal equity court to stay its hand." Burford, 319 U.S. at 327, 334.
 
 
 10
 The Supreme Court has recently "distilled" the doctrine represented by the Burford decision into the following formulation:
 
 
 11
 Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 12
 New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) ("NOPSI ") (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)). Our most recent decision involving the Burford doctrine concluded:
 
 
 13
 In cases in which plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances not present here, the district courts should abstain under the Burford doctrine to avoid interference with the State's or locality's land use policy.
 
 
 14
 Pomponio v. Fauquier County Bd. of Supervisors, No. 91-1107, slip op. at 17 (4th Cir. Apr. 15, 1994) (en banc).
 
 
 15
 It is against this background that we must decide whether the district court erred in abstaining under the Burford doctrine.[5]
 
 A.
 
 16
 This case centers on the permitting of a waste facility that may affect Maryland's environment, a matter of obvious public import with significant repercussions transcending the results of this litigation. NOPSI, 491 U.S. at 361; see Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc., 720 F.2d 897, 904 (6th Cir.1983) (Michigan has "overriding interest in the protection of its environment from the effects of unregulated hazardous wastes."). Proper disposition of the case will require resolution of difficult issues pertaining to the use of land within Montgomery County, Maryland, issues which "are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy." Browning-Ferris, Inc. v. Baltimore County, 774 F.2d 77, 79 (4th Cir.1985) (renewal of refuse disposal permits for land fills); see also 42 U.S.C.A. Sec. 7401(a)(3) (West Supp.1994) ("[A]ir pollution prevention [and] ... control at its source is the primary responsibility of States and local governments."); Pomponio, slip op. at 15 (questions of state and local land use law are "classic" Burford situations); Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 945 F.2d 760, 763-64 (4th Cir.1991) (annexation and sewer services), cert. denied, 112 S.Ct. 1477 (1992). Hence, the first NOPSI prong is applicable to this case.
 
 
 17
 Within its extensive Environment Article, Maryland instituted a comprehensive scheme for environmental permit applications, issuance, and review, aimed at establishing the kind of coherent State policy for the protection of its vital environmental interests that the Supreme Court referred to in the second prong of NOPSI. 491 U.S. at 361. Proper environmental permits must be obtained prior to the construction, installation, or operation of an incinerator or other facility capable of causing or controlling emissions into the air. Md. Envir. Code Ann. Secs. 2-401, 9-204(d), (h) (1993 Repl.Vol.). Permit applications must include environmental impact statements; complete plans and specifications for the proposed facility; application forms, drawings, vendor proposals and guarantees, literature, and purchase specifications for all equipment to be used at the facility; area maps and descriptions (including distance to residences); alternative site sizes, production processes, and environmental control techniques; demonstrated compliance with applicable State workers' compensation laws; and any other information that MDE deems "necessary to determine whether the source or installation can operate in continuous compliance" with Maryland's environmental laws. Md. Envir. Code Ann. Sec. 9-204(e); Md. Regs.Code tit. 26, Sec. 11.02.09. Applicants for incinerator-related permits must provide additional information, including descriptions of pollution prevention and liquid waste treatment or disposal procedures; operational and maintenance manuals; methods for segregating and handling unacceptable waste; and detailed engineering plans for the facility and all related machinery. Md. Regs.Code tit. 26, Sec. 04.07.25.B. Prospective permittees must also comply with an additional index of operating procedures and periodic reporting requirements. Md. Regs.Code tit. 26, Sec. 04.07.25.E.
 
 
 18
 Permit applications are then subjected to a preliminary technical review by MDE, Md. Envir. Code Ann. Sec. 9-210(a)(1) (1993 Repl.Vol.), review by the county in which the facility is to be located for conformity with applicable county zoning and land use requirements and solid waste plans, Md. Envir. Code Ann. Sec. 9-210(a)(3), and public[6] and adjudicatory hearings, Md. Envir. Code Ann. Secs. 1-605, 1-606 (1993 Repl.Vol.), before final issuance of a permit by the Secretary of MDE. Md. Envir. Code Ann. Secs. 1-602, 2-404 (1993 Repl.Vol.). Decisions of the Secretary or a designated hearing officer are directly appealable to the State courts. Md. Envir. Code Ann. Sec. 1-606(g)(2).
 
 
 19
 Finally, issued permits are subject to continued review for purposes of renewal, alteration or extension of existing facilities, or installation of new systems at existing facilities. Md. Envir. Code Ann. Secs. 9-213, 9-221 (1993 Repl.Vol.). The complexity of Maryland's permitting scheme rivals that of Michigan, which was deemed by the Sixth Circuit to be "a complex and systematic process to evaluate facilities which will have an impact on the environment" warranting the invocation of Burford abstention. Ada-Cascade Watch Co., 720 F.2d at 905.
 
 
 20
 Of course, it is true that the mere presence of a complex state or local regulatory scheme does not mandate abstention. NOPSI, 491 U.S. at 361. Similarly, "a final appeal to a central administrative court with special expertise and jurisdiction to decide only certain kinds of cases is not an absolute prerequisite for the application of Burford abstention." Browning-Ferris, 774 F.2d at 80. In this case, however, we find that Maryland's "complex state regulatory scheme" satisfies Burford by providing "impartial and fair administrative determinations subject to expeditious and adequate judicial review" in these "important matters of state policy." Id. at 79 (quoting Aluminum Co. v. Utilities Comm'n, 713 F.2d 1024, 1029 (4th Cir.1983), cert. denied, 465 U.S. 1052 (1984)). The exercise of federal jurisdiction over MDE's permitting decisions would disrupt Maryland's complex statutory scheme and frustrate the State's efforts to establish a coherent environmental policy, thereby warranting Burford abstention under the second prong of NOPSI as well.[7]
 
 B.
 
 21
 In opposition to Burford abstention, Sugarloaf argues that, because its CAA and RCRA claims are within the exclusive jurisdiction of the federal judiciary, abstention by the district court precludes judicial review of those federal claims. See Brandenburg, 859 F.2d at 1192-95 (discussing civil RICO claims).
 
 
 22
 " '[T]he presence of federal-law issues must always be a major consideration weighing against surrender' [of federal jurisdiction], ... [a] consideration [that] is even more significant when federal jurisdiction is exclusive." Kruse v. Snowshoe Co., 715 F.2d 120, 124 (4th Cir.1983) (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983)), cert. denied, 465 U.S. 1065 (1984). If Sugarloaf's claims are indeed subject to exclusive federal jurisdiction, then the presence of the NOPSI circumstances discussed above would not warrant Burford abstention, because of the absence of available "timely and adequate state-court review" for those federal claims. NOPSI, 491 U.S. at 361. We need not consider whether the federal citizen suit provisions of CAA and RCRA contemplate exclusive federal jurisdiction, however, because our count-by-count examination of the substance of Sugarloaf's complaint, as undertaken in similar circumstances by this court in Palumbo, 989 F.2d at 160-61, leads us to the conclusion that Sugarloaf is merely attempting a collateral attack of MDE's permitting decisions.
 
 
 23
 Count I of Sugarloaf's complaint alleges that the proposed facility does not comply with CAA's required lowest achievable emission rate for ozone pollution because it does not account for offsets that are required to be obtained upon the facility's operation. Examination of the provisions cited in support of this offset obligation, 42 U.S.C.A. Sec. 7503(a)(2), (3), (5) (West 1983 & Supp.1994), reveals that such setoffs are a prerequisite for the issuance of construction permits for stationary pollutant emission sources, which in turn are required of all state implementation plans for nonattainment areas[8] under 42 U.S.C.A. Sec. 7502(c)(5) (West Supp.1994). Sugarloaf does not allege that Maryland's regulatory scheme fails to incorporate this federal statutory minimum requirement. See 42 U.S.C.A. Sec. 7511a(a)(2)(C) (States bear responsibility of incorporating new ozone control requirements in state implementation plans) (West 1983 & Supp.1994); see also 42 U.S.C.A. Sec. 7401(a)(3).
 
 
 24
 Rather, Sugarloaf's complaint claims that the failure of the County and NMWDA to comply with the offset obligation invalidates the permits because MDE, as the permitting authority, should not have issued the permits without first insuring full and proper compliance with the offset requirement. Hence, in effect, Count I is "simply [an] expression[ ] of displeasure with the alleged inadequacies of [MDE] review." Palumbo, 989 F.2d at 160. Count I is actually an objection to a state agency's findings under state law, and "nothing more than a collateral attack on the prior permitting decisions of" MDE. Palumbo, 989 F.2d at 159. As such, that claim is not actionable under CAA.[9] Moreover, a federal court's consideration of Count I would necessarily entail a determination of Appellees' compliance with the offset requirement and their ensuing eligibility for the permits, issues central to state land use control which federal courts are ill-equipped to resolve. Browning-Ferris, 774 F.2d at 80. Burford abstention remains appropriate.
 
 
 25
 Count III contends that Appellees failed to "size" the proposed facility for present and anticipated future recycling needs, consistent with the RCRA requirement in 42 U.S.C.A. Sec. 6943(d) (West Supp.1994):
 
 
 26
 [I]t is the intention of this chapter and the planning process developed pursuant to this chapter that in determining the size of the waste-to-energy facility, adequate provision shall be given to the present and reasonably anticipated future needs of the recycling and resource recovery interest within the area encompassed by the planning process.
 
 
 27
 This provision, notably expressing a congressional intent as opposed to a minimum prerequisite for obtaining RCRA federal funding for solid waste disposal plans, is addressed to the state planning process, not individual permittees. Sugarloaf does not argue that Maryland's planning process fails to consider these recycling needs. Instead, Count III masks, in RCRA language, a claim that MDE erred by issuing permits to the County and NMWDA despite their alleged "sizing" violation. Sugarloaf is essentially arguing that MDE erred in its "sizing" determination. Here again, Sugarloaf has unsuccessfully cloaked another collateral challenge to MDE's permitting decision as a federal statutory claim. Such a permitting challenge is more appropriately addressed by Maryland's administrative and judicial procedures specifically designed for that purpose, rather than by a federal law suit.
 
 
 28
 Federal review of MDE's issuance of permits would violate this court's recent pronouncement that "federal courts should not leave their indelible print on local and state land use ... law by entertaining these cases and, in effect, sitting as a zoning board of appeals, ... or a Planning Commission, or Board of Supervisors." Pomponio, slip op. at 15.
 
 
 29
 Count IV cites an alleged failure to comply with CAA and Maryland statutory requirements that the facility include the "best available control technology," or BACT, including source separation, waste reduction, and recycling. The CAA does impose a preconstruction requirement that all proposed waste facilities contain the BACT. 42 U.S.C. Sec. 7475(a)(4) (1988). However, that term is defined according to "emission limitation[s] ... which the permitting authority, on a case-by-case basis, ... determines is achievable for such facility through application of production processes and available methods, systems, and techniques" for the control of regulated pollutants. 42 U.S.C.A. Sec. 7479(3) (West Supp.1994) (emphasis added). In other words, the determination of the BACT for a particular facility and the compliance therewith by potential permittees is again a preliminary finding MDE is required to make before issuing a permit. Sugarloaf does not allege that Maryland failed to implement CAA's BACT requirement. Instead, Count IV claims that MDE's BACT determination for this particular facility and Appellees' compliance with the appropriate BACT was lacking, again challenging the substantive basis for MDE's permitting decision. The CAA federal citizen suit provision does not allow such a challenge, and a federal court should abstain from rendering such review. Palumbo, 989 F.2d at 159.
 
 
 30
 Finally, given our conclusion that Sugarloaf has failed to invoke the federal jurisdiction contemplated by the CAA or RCRA federal citizen suit provisions, there is no basis for federal jurisdiction over the remaining allegation in Count IV of a Maryland statutory violation or the state claim for nuisance set forth in Count II. 28 U.S.C.A. Sec. 1367(c)(3) (West 1993).
 
 
 31
 Sugarloaf's complaint, dressed in the raiments of federal claims, does nothing more than resurrect in a different forum objections to a proposed incinerator that have already been litigated before a state ALJ and the Secretary of MDE. "Plaintiffs cannot launch a grapeshot collateral attack on the permitting decisions of[an agency]--invoking RCRA, the Clean Air Act, [state] hazardous waste laws, and the common law of nuisance--and hope that one of these shots will land them in a federal district court." Palumbo, 989 F.2d at 161; see also Ada-Cascade Watch Co., 720 F.2d at 905 (refusing to "second-guess" state agency's permitting decision for a hazardous waste facility in context of RCRA citizen suit). Sugarloaf makes no constitutional challenge to Maryland's statutory permitting scheme, see Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 788 n. 10 (4th Cir.1991) (abstention inappropriate in constitutional challenge to regulations within complex state regulatory scheme), or objection to Maryland's environmental permitting policy, see Neufeld, 964 F.2d at 350 (Burford abstention inappropriate merely because resolution of federal question may result in overturning state policy). The district court was faced solely with state land use issues. "[W]e have held that, absent unusual circumstances, a district court should abstain under the Burford doctrine from exercising its jurisdiction in cases arising solely out of state or local ... land use law, despite attempts to disguise the issues as federal claims." Pomponio, slip op. at 15-16 (emphasis added) (footnote omitted). With no exceptional circumstances present, the district court properly exercised its discretion under Pomponio in abstaining pursuant to the Burford doctrine. Id. at 17.
 
 
 32
 Moreover, the absence of a properly asserted federal citizen suit under CAA or RCRA precludes any suggestion that state court review would deprive Sugarloaf of an adjudication on the merits of any claim asserted in its complaint. Hence, the presence of both NOPSI circumstances, as found above in section II. A., renders Burford abstention mandatory in this case. At best, this case represents "a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors," circumstances deemed amenable by the NOPSI Court to Burford abstention. 491 U.S. at 362.
 
 III.
 
 33
 Notwithstanding the district court's proper invocation of Burford abstention, we must modify the dismissal order to reflect the proper dispositive stance of this case. Dismissal is indeed "the appropriate course of action in a Burford abstention case." Pomponio, slip op. at 17. However, as it presently stands, the district court's final order does not specify the mode of dismissal contemplated, and therefore operates as an adjudication on the merits. Fed.R.Civ.P. 41(b). That disposition would preclude any judicial review as to the merits of the facts underlying Sugarloaf's erroneous invocation of the federal citizen suit provisions of CAA and RCRA and, potentially, any other viable federal claim under those acts. Hence, we amend the dismissal order to reflect a dismissal without prejudice.
 
 
 34
 At oral argument, the suggestion was made that, rather than amending the dismissal order, this court vacate that order and remand the case with instructions to the district court to hold the case in abeyance pending full review in Maryland's appellate courts of Sugarloaf's objections to the permit's issuance. Although dismissal is typically required in Burford cases, in certain limited circumstances, an abstaining district court may retain federal jurisdiction "in order to insure a just disposition of [the] litigation should anything prevent a prompt state court determination."[10] Kaiser Steel Corp. v. W.S. Ranch Co., 391 U.S. 593, 594 (1968); see also Ankenbrandt v. Richards, 112 S.Ct. 2206, 2216 n. 8 (1992).
 
 
 35
 We decline the request to order that this case be held in abeyance, thereby retaining federal jurisdiction, for two reasons. First, dismissal is more consistent with "the object of Burford abstention ... to avoid disruption of a comprehensive state regulatory apparatus." Brandenburg, 859 F.2d at 1195 n. 18. Second, and perhaps more obvious, our conclusion herein that Sugarloaf has failed properly to invoke the federal citizen suit provisions of CAA and RCRA precludes exercise of federal jurisdiction over Sugarloaf's complaint. We note, consistent with Brandenburg, that this disposition does not prejudice Sugarloaf's right to pursue either the claims asserted herein in subsequent state court proceedings or new federal claims, properly invoked under the federal citizen suit provisions of CAA and RCRA, in a subsequent federal action. See id.
 
 IV.
 
 36
 For the reasons stated herein, we modify the district court's dismissal order to reflect dismissal without prejudice and affirm its decision to abstain from interfering in Maryland's complex environmental permitting regulatory scheme.
 
 AFFIRMED AS MODIFIED
 
 
 [1]
 Burford v. Sun Oil Co., 319 U.S. 315 (1943)
 
 
 [2]
 Other Appellants in this case include the Audubon Naturalist Society of the Central Atlantic States, the Dickerson-Beallsville Coalition, and several individuals. We refer to all Appellants hereinafter as Sugarloaf
 
 
 [3]
 This trial-like proceeding was conducted after Sugarloaf's ultimate success on a motion for declaratory judgment originally denied by the Circuit Court for Baltimore City. Sugarloaf Citizens' Ass'n v. Northeast Md. Waste Disposal Auth., 594 A.2d 1115 (Md.1991)
 
 
 [4]
 Deakins v. Monaghan, 484 U.S. 193, 203 (1988)
 
 
 [5]
 Our court has held that the invocation of Burford abstention is a discretionary act subject to a review only for abuse. See, e.g., Pomponio, slip op. at 9. In supporting its abuse of discretion review of the invocation of Burford abstention, the Pomponio court cited Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250-51 (4th Cir.1993), which in turn cited Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir.1988), a pre-NOPSI decision. Id
 In NOPSI, the Supreme Court required abstention under the two enumerated circumstances, 491 U.S. at 361 ("a federal court sitting in equity must decline to interfere with" state proceedings) (emphasis added). Thus, it would seem at least arguable that, in either of the circumstances described in NOPSI, a district court's failure to abstain under Burford, as mandated by NOPSI, would be a legal error subject to de novo review. See Farmer v. Employment Sec. Comm'n, 4 F.3d 1274, 1279 (4th Cir.1993). The Pomponio court recognized the mandatory nature of Burford abstention as enunciated in NOPSI, but did not address its ensuing implication on the applicable standard of review. See id. at 12 ("[T]he Supreme Court has directed that in the two situations it has described [in NOPSI ], a federal court must decline to exercise its jurisdiction under the Burford abstention doctrine....").
 We save for another day the resolution of the question of the appropriate standard of review for NOPSI abstention cases. In this case, in order to satisfy both positions, we have conducted a de novo review of the record, with particular attention to Sugarloaf's complaint, to determine whether the district court complied with its mandatory NOPSI obligation and whether, if NOPSI is inapplicable, the court otherwise properly acted within its discretion.
 
 
 [6]
 MDE is required to publish notice of all permit applications and, if a timely request is made thereafter, to conduct a public informational meeting concerning the application. Md. Envir. Code Ann. Sec. 1-603(a), (c) (1993 Repl.Vol.). Additional public hearings must be conducted, upon request, after MDE makes a tentative determination to issue a permit. Md. Envir. Code Ann. Secs. 1-604(a), 2-404(b) (1993 Repl.Vol.)
 
 
 [7]
 The fact that Sugarloaf is simultaneously pursuing state appellate review of MDE's permitting decision does not, by itself, warrant abstention, even under the abstention doctrine established by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971)
 [I]t has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.
 NOPSI, 491 U.S. at 368. However, we find that the presence of ongoing state appellate review, implemented as part of the review process within a complex state regulatory scheme aimed at establishing a coherent state policy as to matters of substantial public interest, lends further credence to the invocation of the Burford abstention doctrine. See Colorado River, 424 U.S. at 815 (federal judicial review of permit otherwise subject to elaborate state review system "would have had an impermissibly disruptive effect on state policy"); Aluminum Co., 713 F.2d at 1029 n. 2 (admonishing against interference with state appellate proceedings because it is "more highly duplicative" and "a direct aspersion on the capabilities and good faith of state appellate courts" (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975))).
 
 
 [8]
 A nonattainment area is a geographic region "that does not meet ... the national primary or secondary ambient air quality standard" for a particular controlled pollutant. 42 U.S.C.A. Sec. 7407(d)(1)(A)(i) (West Supp.1994)
 
 
 [9]
 The CAA federal citizen suit provisions applicable to this case authorize actions against persons allegedly violating an "emission standard or limitation," 42 U.S.C.A. Sec. 7604(a)(1), or constructing a major emitting facility without a permit, 42 U.S.C.A. Sec. 7604(a)(3). This case presently involves neither scenario, since Appellees have all of the permits required for the construction of this facility and, until construction is completed in 1995, can neither begin emissions nor violate any emissions standard. See Wilder v. Thomas, 854 F.2d 605, 613-14 (2d Cir.1988) (CAA citizen suit provisions unavailable for challenges to actions that are valid under applicable state implementation plans), cert. denied, 489 U.S. 1053 (1989)
 Because of our conclusion with regard to Sugarloaf's invocation of the CAA federal citizen suit provision, we do not consider the merits of Appellees' affirmative defense that, because the permits for this facility were issued prior to the implementation of the new ozone offset requirements, the permits are excused from the offset requirements under Maryland's still-pending proposed amendments to its state implementation plan.
 
 
 [10]
 Although the majority in Kaiser Steel did not identify the abstention doctrine applied in that case, it was characterized as a Burford abstention case by the three concurring justices and the Court's subsequent opinion in Colorado River, 424 U.S. at 814. 17A Wright et al., Federal Practice and Procedure Sec. 4245 n. 8