**Leon NEUFELD, Plaintiff–Appellant,**

**v.**

**The CITY OF BALTIMORE; the Mayor and City Council of Baltimore, in their official capacities and their successors in title; the Board of Municipal and Zoning Appeals of Baltimore City; Robert E. Smith, as Director of the Office of Communication and Cable of the City of Baltimore, Defendants–Appellees.**

**No. 91–2721.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1992.

Decided May 19, 1992.

William Edward Seekford, Towson, Md., argued, for plaintiff-appellant.

Sandra Rosenbaum Gutman, Acting Principal Counsel, Baltimore, Md., argued (Michael G. Raimondi, Asst. City Sol., on the brief), for defendants-appellees.

Before SPROUSE, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.

SPROUSE, Circuit Judge:

The question presented is whether the district court correctly abstained under the *Burford* doctrine [1] in dismissing Leon Neufeld's suit involving constitutional and preemption issues relating to a Baltimore City zoning ordinance regulating size and placement of television antennas. We believe the district court improperly abstained under *Burford* and, accordingly, reverse and remand.

I

Leon Neufeld, a Baltimore City homeowner, received three local television channels and several distant channels from a roof-mounted antenna prior to March 31, 1984. On that date, Neufeld installed a satellite dish in his front yard from which he received over 150 channels; the dish was ten feet wide.

The following month, Baltimore City notified Neufeld that he had installed his satellite dish in violation of the then existing Baltimore City zoning laws.[2] Neufeld appealed the violation notice to the Board of Municipal and Zoning Appeals (the Board) which has authority to grant variances from the zoning laws. Neufeld also asked the Board for a conditional use permit for the dish. The Board denied Neufeld's request, finding that the satellite dish was harmful to the general welfare of the community in violation of the controlling ordinance. Neufeld appealed the Board's decision to the circuit court for Baltimore City, which affirmed. Between Neufeld's appeal and the circuit court's affirmance, Baltimore City amended its zoning laws.[3]

Neufeld refused to dismantle the dish, and, on October 8, 1985, the City filed criminal charges against Neufeld for violating the zoning ordinance. He was convicted and fined $100. Neufeld appealed his conviction to the circuit court for Baltimore City alleging that the ordinance was preempted by Federal Communications Commission Regulation, 47 C.F.R. § 25.-104,[4] and that enforcement of the ordinance violated his First and Fourteenth Amendment rights. The circuit court affirmed his conviction. Several days later, Neufeld was convicted of ten additional violations of the ordinance and fined $100 for each violation. Neufeld subsequently removed the dish from his property.

1. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

2. Specifically, Neufeld had not sought approval from the Board of Municipal and Zoning Appeals for his free-standing antenna. *See* Baltimore City, Md., Code art. 30, § 4.1–1c (1983). In addition, Neufeld's dish was not placed within the required set back. *See* Baltimore City, Md., Code art. 30, § 4.1–2b (1983).

3. On January 23, 1985, the Baltimore City Council passed a new zoning ordinance which imposes stricter requirements upon satellite dish antennas than the previous ordinance. Mounted satellite dishes must be less than four feet wide if solid, and less than six feet wide if mesh. *See* Baltimore City, Md., Code art. 30, § 4.1–1b.1a (1985). Other mounted television antennas, however, can reach twelve feet above the building. *See* Baltimore City, Md., Code art. 30, § 41–1b.1 (1985). Free-standing satellite dishes must be less than six feet wide and less than ten

feet high. *See* Baltimore City, Md., Code art. 30, § 4.1–1b.1b (1985). However, some entities, such as churches, schools, and motels may erect free-standing satellite dishes which are less than twelve feet wide. *See* Baltimore City, Md., Code art. 30, § 4.1–1b.1c.

4. The Federal Communications Commission Regulation states:

State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:
  (a) Have a reasonable and clearly defined health, safety, or aesthetic objective; and
  (b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.
47 C.F.R. § 25.104.

In May 1987, Neufeld filed a complaint in the United States District Court for the District of Maryland against Baltimore City and others[5] requesting declaratory and injunctive relief and damages. He again alleged that the Baltimore City zoning ordinance was preempted by the FCC regulation and that enforcement of the ordinance violated his constitutional rights. A magistrate recommended that the court abstain *sua sponte* from exercising jurisdiction under *Burford.* On October 3, 1991, the district court adopted the magistrate's recommendation and dismissed the action. Neufeld appeals.

The only issue on appeal is whether the district court properly abstained under *Burford.*

## II

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that the district court properly refused to exercise jurisdiction over a challenge to a Texas Railroad Commission's order granting the petitioner Burford a permit to drill four oil wells on a small plot of land. The uniqueness of the facts underlying *Burford* weighed heavily in the Court's holding. The Court explained that the geological nature of oil and gas fields, which can flow through many lots, required regulation of the fields as one unit. The Texas legislature, in response, had provided a comprehensive administrative and judicial review of the Commission's orders, consolidating all cases in one state district court and providing for state appellate review. Given these circumstances, the Supreme Court believed that the presence of federal courts acting as a parallel forum interpreting state law created a risk of inconsistent decisions that threatened the viability of the Texas scheme. The importance of oil and gas revenues to Texas's economy exacerbated the harm that might result from inconsistent decisions. The Court concluded that,

under these circumstances, it was proper to abstain.

Given the unique facts of *Burford* and that the Court articulated no hard-and-fast rule, the Court in subsequent cases has attempted to define with greater particularity the parameters of the *Burford* doctrine. In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court emphasized that abstention is the exception, not the rule, and can only be justified in exceptional cases. *Id.* at 813, 96 S.Ct. at 1244. The Court then described two situations in which *Burford* abstention would be appropriate. One occurs when there are difficult questions of state law bearing on important policy considerations. *Id.* at 814, 96 S.Ct. at 1244. As an example of such a case the Court cited *Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), which involved the unsettled question of the scope of a municipality's eminent domain power under state law. The second situation arises when the exercise of federal review would disrupt state efforts to establish a coherent policy on a matter of substantial public concern. *Id.* 424 U.S. at 814–15, 96 S.Ct. at 1244–45. The Court cited *Burford* as an example.

In *New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*NOPSI*), the Court reiterated more succinctly the facts required for *Burford* abstention. There, the Court, quoting *Colorado River,* tells us that *Burford* abstention is appropriate:

(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

---

5. The other defendants included Baltimore's Mayor, the Baltimore City Council, the Board of Municipal and Zoning Appeals, and Robert Smith, Director of the Baltimore agency, Office of Communication and Cable.

*Id.* at 361, 109 S.Ct. at 2514 (citations and quotation marks omitted). In *NOPSI,* however, the Court made clear that the mere presence of complex state administrative processes does not necessarily require abstention, even where there exists a potential for conflict between federal and state law. *Id.* at 362, 109 S.Ct. at 2514.

In *NOPSI,* a public utility company, New Orleans Public Service, Inc. (NOPSI), sued the New Orleans City Council for refusing to approve a rate increase to cover the additional costs of constructing and operating a nuclear reactor. NOPSI argued before the district court that the City's decision not to approve the full rate increase was preempted by the Federal Energy Regulatory Commission's (FERC) decision allocating a specific percentage of the costs to NOPSI. The district court abstained from entertaining NOPSI's suit under *Burford* and the Fifth Circuit affirmed. The Supreme Court, however, held that *Burford* abstention was inappropriate. It emphasized that NOPSI's primary claim was that federal law preempted the City Council from refusing to provide reimbursement for FERC-allocated costs, so that the suit did not involve state law claims nor were its federal claims entangled in a "skein of state law". *Id.* at 361, 109 S.Ct. at 2514. In addition, the Court reasoned that determining this type of preemption claim would not disrupt the State's attempt to ensure uniform retail order rates. It reasoned that the abstention doctrine did not require withdrawal of federal jurisdiction merely because resolution of a federal question might result in overturning state policy. *Id.* at 363, 109 S.Ct. at 2515.

Applying the *NOPSI* formulation of the *Burford* doctrine to the case at hand, we believe that the district court erred in abstaining with regard to Neufeld's preemption claim. The district court did not have before it a case involving difficult questions of state law involving peculiarly local concerns. Moreover, exercising federal jurisdiction would not have disrupted a coherent state policy by subjecting the provisions of the zoning ordinance to varying interpretations. Neufeld did not attack the substantive basis of the Board's denial of his conditional use permit, but rather asserted that the application of the zoning ordinance as a whole was preempted by a FCC regulation. As the Supreme Court has emphasized, a federal court should not abstain under *Burford* just because resolution of a federal question may result in overturning state policy. *NOPSI,* 491 U.S. at 363, 109 S.Ct. at 2515. Furthermore, several circuit courts have emphasized that *Burford* abstention is particularly inappropriate when preemption issues are present. *See Middle South Energy, Inc. v. Arkansas Public Serv. Com'n,* 772 F.2d 404, 417 (8th Cir.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) (*Burford* abstention is inappropriate when federal law or the Constitution place the regulation at issue beyond the state's authority); *Baggett v. Dept. of Professional Regulation, Bd. of Pilot Com'rs,* 717 F.2d 521, 524 (11th Cir. 1983) (*Burford* abstention is inappropriate in a preemption challenge because there is no need to protect the goal of *Burford*— protecting a state's comprehensive regulatory scheme—where the scheme is beyond the state's authority); and *Intern. Broth. of Elec. Wrks., Local Union No. 1245 v. Public Serv. Com'n of Nevada,* 614 F.2d 206, 212 n. 1 (9th Cir.1980) (*Burford* abstention is particularly questionable when the basis of the plaintiff's claim is preemption).

Neufeld's constitutional claims are likewise poor candidates for *Burford* abstention. Neufeld claims that the zoning ordinance impermissibly infringes his First Amendment rights by restricting his access to information, due to size and placement limitations on satellite dishes. He also claims that his Fourteenth Amendment rights are violated because the zoning laws discriminate among users of free-standing satellite dishes—allowing churches, schools, and motels to operate twelve foot dishes while restricting other satellite users to six foot dishes. Again, neither of these claims present difficult questions of state law concerning peculiarly local issues, nor would a federal decision disrupt the efficacy of an important and coherent state

policy. Of course, the threat that the federal courts might decide the entire state system unconstitutional is not a valid justification for *Burford* abstention. *See Bath Memorial Hosp. v. Maine Health Care Finance Com'n*, 853 F.2d 1007, 1013 (1st Cir.1988) (abstention under *Burford* rests upon the threat to the proper administration of a constitutional state regulatory scheme, not the threat that the federal court might declare the entire state system unconstitutional).

We have, of course, stated that *Burford* abstention is often appropriate where land use issues are present. *See, e.g. Browning–Ferris, Inc. v. Baltimore County, Md.*, 774 F.2d 77, 79 (4th Cir.1985) (involving a determination whether a waste disposal permit was properly denied); and *Caleb Stowe Assoc. v. County of Albemarle Va.*, 724 F.2d 1079 (4th Cir.1984) (involving the lawfulness of a county Board of Supervisors' denial of a land development plan). *But see Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781, 788 n. 10 (4th Cir.1991) (district court correctly declined to abstain under *Burford* in case involving issues of state waste management laws). This case, however, involves local land use issues only in a peripheral sense. And, to the extent that land use issues are involved, they are not presented in the context of difficult interpretations of state law of peculiar concern to Baltimore City.

Accordingly, we reverse and remand to the district court for consideration of Neufeld's claim on its merits.

REVERSED AND REMANDED.