**John D. MACDONALD and Patricia MacDonald, Plaintiffs–Appellants,**

**v.**

**The VILLAGE OF NORTHPORT, MICHIGAN, et al., Defendants–Appellees.**

**No. 97–1373.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 17, 1998.

Decided Jan. 11, 1999.

---

Paul D. Fox (argued and briefed), Grand Rapids, Michigan, for Appellants.

James I. Sullivan (argued and briefed), Eric H. Findlay, Jeffrey J. Noorman (briefed), Sullivan, Crowley & Beeby, Traverse City, Michigan for Village of Northport.

James R. Piggush (argued and briefed), James E. Riley, Office of the Attorney General, Natural Resources Division, Lansing, Michigan, for Douglas B. Roberts.

Wendy A. Spickard, Consumers Power Company, Jackson, MI, for Consumers Power Company.

Before: RYAN, CLAY, and OAKES,* Circuit Judges.

OAKES, J., delivered the opinion of the court, in which CLAY, J., joined. RYAN, J. (p. 973), delivered a separate concurring opinion.

## OPINION

OAKES, Circuit Judge.

### PRELIMINARY STATEMENT

The MacDonalds appeal from a judgment of the United States District Court for the Western District of Michigan (Bell, Judge), dismissing their action to amend a plat to remove a public access road that runs along their land.

This appeal presents the question whether the district court properly dismissed an action by homeowners against several defendants, including a Michigan village and the Michigan State Treasurer, relating to the ownership and land use of a portion of a platted street. Because Michigan law provides a regulatory scheme to address disputes relating to land use, the district court properly abstained from deciding the case. In addition, the Eleventh Amendment barred the suit. We therefore affirm.

### BACKGROUND

John and Patricia MacDonald reside in Ohio and own a summer home in Northport, Michigan. Part of the platted street adjacent to the MacDonalds' Northport property provides public access to the Grant Traverse Bay of Lake Michigan; the parties refer to this access as the "7th Street right-of-way" or the "road-end access." The MacDonalds claim that the public use of the 7th Street right-of-way interferes with their enjoyment of their property.

The MacDonalds sued the Village of Northport and other defendants, including the State Treasurer, on several grounds relating to the ownership and use of the 7th Street right-of-way. In Count I of their complaint, the MacDonalds asked the court to vacate the 7th Street right-of-way adjacent to their property, and to amend the plat. Because this remedy implicated the public interest relating to land division, public roads, and public access to navigable and public trust waters, the MacDonalds were required by statute to join various state officials as defendants.[1]

---

* The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. *See Mich. Comp. Laws Ann.* § 560.222 ("To vacate, correct, or revise a recorded plat or any part of it, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner or the governing body of the municipality in which the subdivision covered by the plat is located."); *Mich. Comp. Laws Ann.* § 560.224a (1) ("The plaintiff shall join as parties defendant ... (c)

The other two counts sought relief from the Village of Northport and did not directly implicate the state defendants. Count II alleged that the Village had "taken" the MacDonalds' property without just compensation, and that the MacDonalds were damaged, by the loss of their quiet enjoyment of their property and by the diminution of its value, in an amount over $50,000. Count III sought an order that the 7th Street right-of-way not be used as a public beach and that the village cease "tolerat[ing] such uses."

In an oral opinion, the United States District Court for the Western District of Michigan (Bell, Judge) held that the presence of a comprehensive state regulatory scheme involving state land use law required abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny. The court also found that the Eleventh Amendment required dismissal because the State was a necessary party and was immune from suit. The court concluded that the *Burford* doctrine and the Eleventh Amendment, "both as separate and distinct grounds, but clearly grounds together," gave the court "insufficient jurisdiction." Accordingly, the court dismissed the case.

## DISCUSSION

### A. *Burford Abstention*

■ Under the *Burford* doctrine, federal courts abstain from deciding cases when there is a need to defer to complex state administrative procedures. In *Burford v. Sun Oil Co.,* 319 U.S. 315, 317–318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Sun Oil Company challenged the Texas Railroad Commission's grant of an oil drilling permit. The Supreme Court held that abstention was necessary in order to defer to the complicated regulatory system established under Texas law in furtherance of that state's interest in conserving its oil and gas resources. *See id.* at 325–32, 63 S.Ct. 1098. The Court emphasized that Texas law consolidated judicial review of commission orders in one state district court, which enabled that court to acquire a specialized knowledge of the oil and

gas regulations and industry, and ensured uniformity in the regulation of the oil industry. *See id.* at 327, 63 S.Ct. 1098. The Court also noted that the Texas courts "can give fully as great relief ... as the federal courts" and that "[d]elay, misunderstanding of local law, and needless federal conflict with state policy, are the inevitable product of this double system of review." *Id.*

■ In *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* ("*NOPSI*") 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court described *Burford* abstention as appropriate in two instances:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* at 361, 109 S.Ct. 2506 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

■ It is against this backdrop that we must determine whether the district court erred by abstaining under the *Burford* doctrine. The MacDonalds argue that abstention was improper because Michigan has not created a specialized forum for deciding this kind of case. The State of Michigan and the Village of Northport counter that abstention was necessary because issues of land use and zoning are purely local disputes and there are no federal questions. We review the district court's abstention de novo. *See Traughber v. Beauchane,* 760 F.2d 673, 676 (6th Cir.1985) ("Because theories of state and federal law, and expressions of federalism and comity, are so interrelated in the deci-

The state treasurer" and (g) "[i]f the requested action may result in a public highway or a portion of a public highway that borders upon, crosses, is adjacent to, or ends at a lake ... being vacated or altered in such a manner as would

result in the loss of public access, the director of the department of natural resources and, if the subdivision is located in a township, the township.").

sion to abstain such dispositions are elevated to a level of importance dictating *de novo* appellate review."). We begin with the fundamental proposition that abstention is a limited exception to the "virtually unflagging" obligation of federal courts to exercise the jurisdiction given them. *Colorado River Water Conservation Dist.*, 424 U.S. at 813 & 817, 96 S.Ct. 1236.

■ As noted above, *NOPSI* authorizes federal district courts to consider abstaining when "timely and adequate state-court review is available." *NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506. This condition is satisfied here, as Michigan law specifically directs parties who seek to amend or revise a plat to file a complaint in the circuit court. *See* note 1. We therefore consider whether abstention was justified under either of the two rationales articulated in *NOPSI*.

An opinion by the district court vacating the 7th Street right-of-way would have impaired the public's ability to reach the Grand Traverse Bay, which is a matter of " 'substantial public concern.' " *NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 814, 96 S.Ct. 1236). *See* Mich. Const. art. IV, § 52 ("The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction."); *Mich. Comp. Laws Ann.* § 324.32702(c) ("The waters of the state are valuable public natural resources held in trust by the state, and the state has a duty as trustee to manage its waters effectively for the use and enjoyment of present and future residents and for the protection of the environment."); *id.* at (d) ("The waters of the Great Lakes basin are a valuable natural resource, and the states and provinces of the Great Lakes region and Michigan share a common interest in the preservation of that resource.").

Furthermore, the Michigan Land Division Act provides a particular procedure to govern lawsuits and plat changes, stating that "[t]o vacate, correct, or revise a recorded plat or any part of it, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner or the governing body of the municipality in which the subdivision covered by the plat is located." *Mich. Comp. Laws Ann.* § 560.222.

The act also obliges the state to be involved in such actions by requiring the joinder of the state treasurer, the director of the department of natural resources, and the township. *See Mich. Comp. Laws Ann.* § 560.224a(1)(c) & (g). That section further provides in part that "The department of natural resources and, if applicable, the township shall review the application and determine within 30 days whether the property should be retained by the state or township as an ingress or egress point, and shall convey that decision to the court." *Mich. Comp. Laws Ann.* § 560.224a(1)(g).

Finally, should the state proceedings initiated under the Land Division Act result in any change to a platted street providing public access to a lake, the act again mandates state involvement: "If a circuit court determines pursuant to this act that a recorded plat or any part of it that contains a public highway or portion of a public highway that borders on, crosses, is adjacent to, or ends at any lake ... should be vacated or altered in a manner that would result in a loss of public access, it shall allow the state ... to decide whether it wants to maintain the property as an ingress or egress point." *Mich. Comp. Laws Ann.* § 560.226(2).

These provisions of the Land Division Act demonstrate that Michigan has developed a systematic process to evaluate claims by landowners that limit the public's ability to access water sources such as the Grand Traverse Bay. By providing the procedure by which the MacDonalds may challenge the validity of the 7th Street right-of-way, Michigan has established a policy and has consolidated judicial review of these cases in the local forums best suited to adjudicate the local issues and facts raised in such cases.[2]

**2.** *Cf. Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) (implying that district court may abstain under *Burford* when it is asked to adjudicate any facts or fashion public policy on behalf

Thus, federal review of the question in this case would have disrupted "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506 (quotations omitted). We therefore conclude that the district court's decision was warranted under *Burford*.[3]

Courts in other jurisdictions have similarly held that federal district courts should abstain from deciding cases that raise issues of state policy with respect to land use. The United States Court of Appeals for the Fifth Circuit approved abstention in a case involving a state water source. *See Sierra Club v. City of San Antonio*, 112 F.3d 789, 791–96 (5th Cir.1997). There, the plaintiffs sought to protect several endangered species living in the Edwards Aquifer by enjoining the City of San Antonio to reduce withdrawals from the aquifer. Reasoning that water regulation was a matter of great state concern, that the aquifer and the endangered species were entirely intrastate, and that the Edwards Aquifer Act was a comprehensive regulatory scheme, the court held that abstention under *Burford* was warranted. *See id.*

In *Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319, 1328 (4th Cir. 1994) (en banc), on which the court below relied, the United States Court of Appeals for the Fourth Circuit upheld the district court's abstention where a real estate developer alleged that local authorities misapplied zoning laws and abused their authority in their decision-making process. The court emphasized that abstaining under *Burford* was especially appropriate in land use cases:

[W]e believe that cases involving questions of state and local land use and zoning law are a classic example of situations in which "the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" We can conceive of few matters of public concern more substantial that zoning and land use laws.

*Id.* at 1327 (citations omitted). The court concluded that "absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise those issues as federal claims." *Id.* at 1327. It further described the federal claims in that case as "really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the basis for the plaintiffs' federal claims." *Id.* at 1326. The same is true in the instant case: all of the MacDonalds' claims, including the takings claim under the United States Constitution, address the land use question of whether the 7th Street access to the Grand Traverse Bay should be used as a public right-of-way. Although *Pomponio* was partially overruled on other grounds,[4] its analysis remains sound.

Finally, we have condoned abstention under *Burford* in cases involving states' efforts to control hazardous waste policies. *See, e.g.*, *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1194–95 (6th Cir.1995) (holding that district court should have dismissed claims under *Burford* doctrine to avoid inter-

of the state in a way that would unduly interfere with the efficient operation of an elaborate state regulatory scheme); *Neufeld v. City of Baltimore*, 964 F.2d 347, 351 (4th Cir.1992), (holding that *Burford* abstention was improper when case involved local land use issues only in peripheral sense and did not require interpretation of state laws of peculiar concern to city).

3. Because we conclude that the district court properly abstained in order to avoid disrupting Michigan policy, we need not address whether abstention was proper under the first rationale described in *NOPSI*.

4. In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 728–31, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court addressed whether a

dismissal based on abstention is appropriate only where the relief sought is equitable or otherwise discretionary. The Fourth Circuit has recognized that *Quackenbush* overruled *Pomponio* to the extent that *Pomponio* permitted a district court to dismiss an action for damages rather than enter a stay to await the conclusion of state proceedings. *See Front Royal and Warren County Indust. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 282 (4th Cir.1998). *Quackenbush* does not affect *Pomponio*'s reasoning that federal courts should abstain under *Burford* from adjudicating equitable actions involving questions of land use.

fering with Kentucky's attempts to establish a coherent policy concerning the operation and licensing of hazardous waste disposal facilities); *Ada–Cascade Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 904–06 (6th Cir.1983) (holding that *Burford* abstention was appropriate in action challenging the construction of a hazardous waste facility because Michigan had a complex system of permit review consistent with its interest in developing a coherent state policy toward hazardous waste facilities).

Because there was timely and adequate state court review available to the Mac-Donalds, and because federal review of the question in this case would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern," *NOPSI*, 491 U.S. at 361,, 109 S.Ct. 2506 we hold that the district court properly abstained from deciding this case.

### B. *Eleventh Amendment Immunity*

■ The district court also reasoned that this case was barred by the Eleventh Amendment. Whether Eleventh Amendment immunity applies is a question of law requiring de novo review. *See Franks v. Kentucky Sch. for the Deaf,* 142 F.3d 360, 362 (6th Cir.1998).

#### 1. *Ex parte Young*

■ We first consider whether the district court might have adjudicated the Mac-Donalds' federal claims under the *Ex parte Young* doctrine.[5] Although the parties do not address this issue, we nonetheless consider it because that doctrine saves some cases from dismissal under the Eleventh Amendment.

■ The Eleventh Amendment states that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State." U.S. Const. amend. XI. The amendment bars not only suits against a state by citizens of another state, but also suits against a state by that state's own citizens. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana,* 134 U.S. 1, 13–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ The Eleventh Amendment also prohibits some suits against state officials. A suit against a state official is barred when the action in essence seeks to recover money from the state, because "'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity.'" *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). Essentially, the amendment bars suits that "would impose a liability which must be paid from public funds in the state treasury." *Id.* But under the doctrine announced in the landmark case of *Ex parte Young,* 209 U.S. 123, 158–159, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a state official sued in his official capacity for prospective equitable relief "is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court." *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1188 (10th Cir.1998). As the Supreme Court has stated,

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.... But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

---

**5.** As an initial matter, the MacDonalds' state law claims are barred by the Eleventh Amendment because such claims cannot be brought against a state even when they have been appended to a federal constitutional claim. *See Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 604–05 (2d Cir.1988). Only allegations of violations of federal law come within the *Ex parte Young* rule;

federal courts have no jurisdiction to entertain actions that seek to require state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1188 (10th Cir.1998). The district court thus properly dismissed those claims.

*Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (citations omitted). And as the United States Court of Appeals for the Tenth Circuit has explained,

> [W]hen a suit names a state official as the defendant, the Eleventh Amendment still bars the action if "the state is the real, substantial party in interest." Whether the state is the real party in interest turns on the relief sought by the plaintiffs. Suits that seek prospective relief are deemed to be suits against the official, while suits that seek retroactive relief are deemed to be suits against the state.

*Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1483 (10th Cir.1995) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) and citing *Edelman,* 415 U.S. at 664–66, 94 S.Ct. 1347).

 Thus, under the *Ex parte Young* doctrine, the Eleventh Amendment bars federal jurisdiction over suits against state officials when the relief sought is retrospective or compensatory in nature, but does not necessarily prohibit suits against state officials based on federal law when only prospective injunctive relief is sought. *See Green,* 474 U.S. at 68, 106 S.Ct. 423. Notably, not all judgments requiring the state to spend money are considered prohibited retroactive relief. That an expenditure of public funds may be incidentally necessary does not alone render relief retroactive; rather, "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence." *Edelman,* 415 U.S. at 668, 94 S.Ct. 1347. But the *Ex parte Young* doctrine does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable. *See id.* at 668, 94 S.Ct. 1347 (stating that *Ex parte Young* does not allow award of "equitable restitution" when the practical effect of such an award is indistinguishable in many respects from an award of damages, and when it is "measured in terms of monetary loss resulting from a past breach").

Before 1997, we would have determined whether the MacDonalds' action was permitted by assessing whether they sought only prospective equitable relief as opposed to any form of money damages or other legal relief. In 1997, however, a sharply divided Supreme Court narrowed the scope of *Ex parte Young.* In *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), an Indian tribe sought a declaratory judgment establishing its right to quiet enjoyment over the submerged lands of Lake Coeur D'Alene, as well as prospective injunctive relief against numerous Idaho state officials to prevent them from exercising the state's asserted regulatory jurisdiction over those submerged lands. *See id.* at ——, 117 S.Ct. at 2032. A majority of justices agreed that the *Ex parte Young* doctrine could not save the federal suit even though the action purported to seek only prospective equitable relief. *See id.* at —— – ——, 117 S.Ct. at 2040–42 (Kennedy, J.). The Court reasoned that the requested injunctive relief was the "functional equivalent" of a quiet title action against the state, which implicated the state's "special sovereignty interests." *See id.* at —— – ——, 117 S.Ct at 2040–41 (stating that lands underlying navigable waters have historically been considered sovereign lands and that state ownership of them has been considered an essential attribute of sovereignty). The Court emphasized the importance of state regulatory control over, and public ownership of, streams and lakes, and concluded that *Ex parte Young* did not support prospective federal court injunctive relief against state officials when that relief intruded on state sovereignty as much as an award of money damages. *See id.* at ——, 117 S.Ct. at 2042.[6]

As one federal court of appeals interprets it, *Coeur d'Alene* requires federal courts to examine whether the relief being sought against a state official "implicates special sovereignty interests," and, if so, whether the requested relief is the "functional equivalent"

---

6. *See generally* Vicki Jackson, *Coeur D'Alene, Federal Courts, and the Supremacy of Federal Law: The Competing Paradigms of Chief Justices Marshall and Rehnquist,* 15 Const. Commentary 301, 312 (1998) (describing *Coeur d'Alene* as expanding the "domain of immunity" by expanding the scope of what is deemed prohibited retroactive relief in suits against state officers); *The Supreme Court, 1996 Term—Leading Cases,* 111 Harv. L.Rev. 269, 269–79 (1997) (arguing that *Coeur d'Alene* has severed a new category of claims from the scope of *Ex parte Young* ).

of a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment. *ANR Pipeline Co.*, 150 F.3d at 1190–91, 1193–94 (holding that request by natural gas companies that state recertify property tax assessments was barred, even though claim was brought in equity, because it sought functional equivalent of money judgment against state and intruded on state's special sovereignty interests).

■■■ In this case, the 7th Street right-of-way provided public access to the Grand Traverse Bay, a navigable waterway that is part of the Great Lakes. Because the state of Michigan has a great interest in maintaining public access to the Great Lakes, the MacDonalds' requested relief implicated "special sovereignty interests." Like the Indian tribe's lawsuit at issue in *Coeur d'Alene Tribe*, the MacDonalds' action was in some ways similar to a quiet title action because they sought a declaration that a portion of the 7th Street right-of-way was the "lawful property of Plaintiffs." Under the doctrine announced in *Ex Parte Young*, and under the analysis now required by *Coeur d'Alene*, we conclude that the Eleventh Amendment was applicable to the MacDonalds' case.

### 2. *Real Party in Interest*

■■■ The MacDonalds contend that the Eleventh Amendment did not bar their action because the State is only a nominal party and not the real party in interest. They claim to have named state agents as defendants only to comply with Michigan statutes requiring that state agencies and agents be named in an action implicating the public interest relating to land division, public roads, and public access to navigable and public trust waters. *See* note 1.

The MacDonalds point to several cases in support of their argument. First, they cite *Excess and Casualty Reinsurance Association v. Insurance Commissioner*, 656 F.2d 491 (9th Cir.1981), in which the United States Court of Appeals for the Ninth Circuit stated that, "[t]o determine whether the eleventh amendment prohibits suit against a state agency, the courts ask whether the state is the real party in interest. This inquiry requires consideration of the 'essential nature and effect of the proceeding.' " *Id.* at 497 (citation omitted) (quoting *Ford Motor Co.*,

323 U.S at 464, 65 S.Ct. 347). In that case, the Florida Insurance Department was named as a defendant in an interpleader action and sought Eleventh Amendment immunity from the judgment. The court noted that the plaintiff did not "seek to recover damages from the Florida Treasury," and reasoned that "the essential nature and effect of the instant proceeding does not indicate a violation of Florida's sovereignty." *Id.* The court concluded that the Eleventh Amendment bar did not apply because the state agency was not a real party in interest, and because the proceeding did not "challenge the functions of state government" or "threaten state fiscal integrity." *Id.* at 498, 65 S.Ct. 347.

The MacDonalds also cite *Ramada Inns, Inc. v. Rosemount Memorial Park Association*, 598 F.2d 1303 (3d Cir.1979), in which a plaintiff sued a private New Jersey cemetery company. The plaintiff joined the Attorney General and the New Jersey Cemetery Board as defendants pursuant to a statute requiring their joinder to any litigation involving cemetery companies. The district court held that the Eleventh Amendment barred the suit because the statute made New Jersey a real party in interest. *See id.* at 1304–05. The Third Circuit reversed, holding that although the statute required joinder of the Attorney General and the New Jersey Cemetery Board, the statute did not make New Jersey a real party in interest to every action brought against a private cemetery located within its borders. *See id.* at 1307–08. Rather, the court noted that "no relief [was] sought from the state," that the state would "not be affected in any substantial way," and that the state was not a real party in interest for purposes of the Eleventh Amendment. *Id.* at 1307.

*Excess and Casualty* and *Ramada Inns* are distinguishable. The court below reasoned that this case was not a local dispute between the MacDonalds and the Village of Northport. To the contrary, several statutes mandated that the state be a party to the suit, the state's interest was "independent of and separate from the particular municipality involved," and the case involved public access to a "navigable waterway [that is] part of the Great Lakes of the State of Michigan." Michigan's interest in maintaining public ac-

cess to the Grand Traverse Bay is therefore less attenuated than the state interests at issue in *Ramada Inns* and *Excess and Casualty.*

Moreover, whereas the *Ramada Inns* court stated that "[n]o possible outcome of this suit could result in ... equitable relief which must be satisfied by the state," *id.* at 1307, a judgment for the plaintiffs in the instant case may have required the state to provide equitable relief. *See Mich. Comp. Laws Ann.* § 560.226(2) ("If a circuit court determines pursuant to this act that a recorded plat or any part of it that contains a public highway or portion of a public highway that borders on, crosses, is adjacent to, or ends at any lake ... should be vacated or altered in a manner that would result in a loss of public access, it shall allow the state ... to decide whether it wants to maintain the property as an ingress or egress point."). And as the MacDonalds conceded in oral argument, a ruling in their favor might have required significant expenditures by the state and the village. For example, had the district court decided this case and ordered the state and village to ensure that the 7th Street right-of-way not be used as a public beach, the state and village would have had to incur significant expenses to comply with such an order, as by policing, signing, or otherwise enforcing the requirement.

In light of these considerations, we conclude that the district court in this case reasonably found that Michigan was a necessary party.

## CONCLUSION

Because the district court properly concluded that the *Burford* abstention doctrine and the Eleventh Amendment created "grounds together" to dismiss this case, we affirm.

RYAN, Circuit Judge, concurring.

While I concur in my brothers' view that the district court correctly abstained from exercising its jurisdiction in this case, I decline to go further and join my brothers in affirming the judgment on Eleventh Amendment grounds.

The majority opinion posits, and indeed rather persuasively so, that the Eleventh Amendment bars the plaintiffs' federal claims against the state despite the doctrine announced in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment does not mean precisely what it says.

The scope of *Ex parte Young* was narrowed, the majority opinion explains, by the Supreme Court's recent decision in *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). That may be so, but I am not entirely convinced. Whether the Coeur d'Alene Tribe's claim of entitlement to quiet enjoyment of the submerged lands of Lake Coeur d'Alene is, for purposes of Eleventh Amendment constitutional doctrine, the essential equivalent of the MacDonalds' claim to the portion of 7th Street next to their home, is a question that needs more thorough vetting than it has been given on this appeal. Indeed, the district court did not address the question in its opinion, and as the majority here observes, the question was not discussed in the parties' briefs.

I am content, therefore, to rest my view that the judgment below should be affirmed solely on my brothers' reasoning that the district court properly invoked the abstention doctrine.