**James E. BICKFORD,
et al., Appellants,**

v.

**LODESTAR ENERGY, INC.,
et al., Appellees.**

**In re Lodestar Energy, Inc.**

**No. CIV.A.02–498–JMH.**

United States District Court,
E.D. Kentucky,
Lexington Division.

Feb. 17, 2004.

J. Alec MacKenzie, Michael P. Wood, Office of Legal Services, Frankfort, KY, for Appellants.

Gregory A. Ruehlmann, Jeffrey Marks, Stephen D. Lerner, Squire, Sanders & Dempsey, Cincinnati, OH, Taft A. McKinstry, Fowler, Measle & Bell, L.L.P., Lexington, KY, for Appellees.

Alan S. Tenenbaum, U.S. Department of Justice, Washington, DC, for Amicus.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Appellants appeal from orders entered by the Bankruptcy Court in Bankruptcy Matter Nos. 01–50969 and 01–50972 on November 21, 2001, and amended on September 20, 2002, determining that any attempt to enforce certain reclamation bonding requirements under Kentucky law would violate the automatic stay imposed by the bankruptcy code and granting Appellees a preliminary injunction against such proceedings. Having reviewed Appellants and Appellees' initial briefs [Record Nos. 3 and 6], Appellants' reply brief [Record No. 8], and the United States of America's Amicus Curiae brief [Record No. 10], and for the reasons stated below, the Court has determined that the decision of the Bankruptcy Court shall be reversed and this matter remanded.

## I. BACKGROUND

KRS Chapter 350 governs surface mining in Kentucky. In order to mine coal in Kentucky, any permittee is required to provide and maintain reclamation bonds acceptable under the applicable state rules and regulations.[1] Appellees have approximately sixty-eight Kentucky surface mining permits. All of Appellee's reclamation bonds are issued by Frontier Insurance Company ("Frontier"), incorporated in the state of New York. On August 24, 2001, the New York Superintendent of Insurance and Frontier jointly petitioned the New York Courts for an Order placing Frontier in rehabilitation under New York's Rehabilitation and Liquidation Act.

The actions in New York had a ripple effect in Kentucky, mandating that the Commissioner of the Kentucky Depart-

1. Specifically, in order to obtain a permit, a party must provide "a reclamation plan for the affected area" and:

... proof that the applicant has public liability insurance coverage satisfactory to the cabinet for the surface mining and reclamation operations for which the permit is sought, or proof that the applicant has satisfied self-insurance requirements as provided by administrative regulations of the cabinet. The coverage shall be maintained in full force and effect during the terms of the permit and any permit renewal, and until reclamation operations are completed. KRS § 350.060(9) and (10).

ment of Insurance ("Commissioner") suspend Frontier's Certificate of Authority.[2] On August 27, 2001, pursuant to the law of the Commonwealth, the Commissioner issued an order suspending Frontier's Certificate of Authority to transact insurance business in Kentucky.

Upon the suspension of the Certificate of Authority, Kentucky Surface Mining laws required certain actions by the Natural Resources and Environmental Protection Cabinet (hereinafter, "Cabinet"):

> Upon the incapacity of a surety by reason of bankruptcy, insolvency, or suspension of its license or certificate of authority, the permittee shall be deemed to be without proper bond coverage...nothing herein shall relieve the permittee of responsibility under the permit or the surety of liability on its bond. The cabinet shall issue a notice to the permittee specifcying [specifying] a reasonable period to replace bond coverage, not to exceed ninety (90) days. If an adequate bond is not posted by the end of the period allowed, the permittee shall cease coal extraction and coal processing operations and shall comply with the provisions of 405 KAR 16:0101, Section 6 or 405 KAR 18:010, Section 4 and shall immediately begin to conduct reclamation operations in accordance with the reclamation plan. Coal extraction and coal processing operations shall not

resume until the cabinet has determined that an acceptable bond has been posted.

405 KAR 10:030, § 2(5)(c)3.

Thus, the Cabinet notified Appellees by letters dated August 28, 2001, that the Kentucky Department of Insurance had suspended Frontier's certificate of authority to do business in the Commonwealth of Kentucky and that Appellees had been deemed to be without performance bond coverage and must obtain new bond coverage within ninety (90) days from the date of the letters.[3] Accordingly, Appellees had until November 26, 2001 to obtain adequate performance bond coverage to be in compliance with state law.

On November 16, 2001, Appellees filed an adversary proceeding in the Bankruptcy Court to enjoin the Cabinet from enforcing state law with regard to these Frontier bonds. In the main bankruptcy action, Appellees filed a Motion for an Order Determining that Certain Threatened Actions Would Violate the Automatic Stay. After a hearing, the Bankruptcy Court issued its oral Findings of Fact and Conclusions of Law and entered two orders, the first in the main bankruptcy case determining that those certain threatened actions by the Cabinet would violate the automatic stay and a second order in the adversary proceeding, granting Appellees' Motion for Temporary Restraining Order

---

**2.** KRS § 304.3–190(1) provides in pertinent part that:

> ...the [Kentucky insurance] commissioner shall refuse to continue or shall suspend or revoke an insurer's certificate of authority:
>
> [b] If a foreign or alien insurer and it no longer meets the requirements for a certificate of authority, as required for domestic insurers, on account of deficiency of capital or surplus or otherwise; or...
>
> [d] If the insurer's certificate of authority to transact insurance therein is sus-

pended or revoked by its state or country of domicile.

806 KAR 3:150 empowers the Commissioner to immediately suspend the certificate of authority of any insurer found to be in such a condition as to render a continuance of their business "hazardous to policyholders, creditors or the general public."

**3.** Appellees did not seek a review of the Cabinet's determination as permitted under 405 KAR Chapter 7:092, § 9. Failure to do so "constitute[s] a waiver of an administrative hearing." 405 KAR Chapter 7:092, § 9.

and/or Preliminary Injunction. At the foundation of each of these orders was the Cabinet's continuing enforcement of the statutory bonding requirement. Appellants subsequently filed Motions to Alter or Amend these orders, but the Bankruptcy Court declined to do so. Appellants thereafter brought the present appeal. The preliminary injunction dissolved on January 20, 2003.[4]

## II. STANDARD OF REVIEW

■ Generally, this Court reviews a bankruptcy court's findings of fact for clear error and a bankruptcy court's conclusions of law *de novo*. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997). This Court reviews a bankruptcy court's decision to grant a preliminary injunction for an abuse of discretion. *See Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 381 (6th Cir.2001). "A court abuses its discretion when it relies on clearly erroneous findings of fact, applies an inappropriate legal standard, or improperly applies the law, with such legal questions receiving *de novo* review." *Id.*

## III. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

■ It is well settled that prospective injunctive relief is available against officers acting in their official capacity to violate federal law, notwithstanding the immunity generally provided by the Eleventh Amendment to such officers as part of the "state" where retroactive or monetary relief is sought. *See Ex parte Young*, 209 U.S. 123, 158–59, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *MacDonald v. Village of Northport*, 164 F.3d 964, 970 (6th Cir. 1999). Appellants contend that this is a situation where, even though a state official is named as a party, the "state is the real substantial party in interest" because if the injunction were to remain in place, the Commonwealth would have to spend "a substantial amount of money in order to rectify problems created by the Appellees' failure to replace their bonds." *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir.1995), *quoted in MacDonald*, 164 F.3d at 971; [Appellant Brief at 35]. The Court disagrees.

■ The exception provided where a state is the real substantial party in inter-

4. As a result, this Court ordered the parties to show cause as to why this appeal should not be dismissed as moot [Record No. 11]. Clearly, this Court may not decide moot issues since under Article II, § 2 of the U.S. Constitution, it only has jurisdiction over actual cases and controversies. *In re Commerce Oil Co.*, 847 F.2d 291, 293 (6th Cir.1988) (citing *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920)). The Environmental and Public Protection Cabinet (the successor to the Natural Resources and Environmental Protection Cabinet in a state government reorganization and, hereinafter, the "Cabinet"), however, has responded that this matter falls under the "capable of repetition, yet evading review" doctrine as described by the Sixth Circuit Court of Appeals in *In re Commerce Oil Co. In re Commerce Oil Co.*, 847 F.2d at 293. This doctrine ap-

plies if "the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same complaining party would be subject to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 148, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), *cited in In re Commerce Oil Co.*, 847 F.2d at 293. The Cabinet describes its expectation that it will be subject to this controversy again and again considering the common nature of controversies in bankruptcy over the breadth of the police power exception to the automatic stay and the repeated instances of surety failures over the years. The Court finds that this is a reasonable expectation. Accordingly and noting that show cause order of January 16, 2004, has been discharged, this Court shall consider this matter.

est is has been aptly described by the district court in *Martin v. Taft:*

> [There are] relatively few cases in which a special state sovereignty issue has been found to exist. Viewed together, the circuit court decisions applying *Coeur d'Alene* illustrate that even significant or important state concerns do not necessarily rise to the level of special state interests. *See Agua Caliente [Band of Cahuilla Indians v. Hardin],* 223 F.3d [1041,] 1048 [(9th Cir.2000)]. To qualify as a special state interest, the attribute of state sovereignty must be "core," *Goldberg [v. Ellett],* 254 F.3d [1135,] 1143 [(9th Cir.2001)]; *ANR Pipeline [v. Lafaver],* 150 F.3d [1178,] 1193 [(10th Cir.1998)], "essential" *[Idaho v.] Coeur d'Alene,* 521 U.S. [261,] 283, 117 S.Ct. 2028[, 138 L.Ed.2d 438 (1997)]; *MCI Telecom. [Corp. v. Bell Atlantic Pennsylvania],* 271 F.3d [491,] 508 [(3d Cir.2001)], or "fundamental" 271 F.3d at 508. Thus far, the only four special interests have been identified: (1) a state's rights in real property—at least where the lawsuit threatens to eliminate the state's interest entirely—*Coeur d'Alene,* 521 U.S. at 283[, 117 S.Ct. 2028] . . .; *MacDonald,* 164 F.3d at 972; (2) the power to tax, *ANR Pipeline,* 150 F.3d at 1193; (3) the emergency power of a state governor to take private property for the benefit and safety of the public, *Duke Energy [Trading and Marketing, L.L.C. v. Davis],* 267 F.3d [1042,] 1053–54 [(9th Cir.2001)]; and (4) the authority of the state to allocate tobacco settlement funds, which authority Congress expressly granted to the state, *Barton [v. Summers],* 293 F.3d [944,] 955 [(6th Cir.2002)].

*Martin v. Taft,* 222 F.Supp.2d 940, 963 (S.D.Ohio 2002). Accordingly, this Court must determine whether or not this matter impacts a core, essential, or fundamental attribute of state sovereignty such that a suit against a state official is, in essence, a suit against the state.

▇▇ Certainly, this case does not resemble that contemplated by the Supreme Court in *Coeur d'Alene* as it would not "eliminate the state's interest [in certain land] entirely." *Id.* Similarly, it does not impact anything so fundamental as the state's power to tax, the power to commit emergency takings for the benefit and safety of the public, or the authority to allocate funds as granted by Congress. *Id.* Nonetheless, Appellants argue that the type of relief sought could force the state to bear the high cost of reclaiming the land, a cost otherwise passed on to mining companies by virtue of the bonding requirement. No doubt, the conservation of scarce public resources, both natural and monetary, are important and central function of the sovereign states, but the relief sought would not itself obligate the Commonwealth to expend those funds. Thus, the Court is not convinced that the relief sought would divest the state of its sovereignty so as to place it in this narrow exception to the already narrow exception to sovereign immunity espoused by *Ex parte Young.* Accordingly, this Court and, thus, the bankruptcy court, have subject matter jurisdiction over this matter under the *Ex parte Young* exception.

## B. POLICE POWER EXCEPTION TO AUTOMATIC STAY

▇▇ 11 U.S.C. § 362 specifies that the automatic stay which generally precludes "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" in bankruptcy does not apply to "the commencement or continuation of an action or proceeding by a governmental unit's . . . police or regulatory power . . . other than [the enforcement of] a money judgment." 11 U.S.C. § 362(a) and (b)(4). It is under-

stood that "Congress clearly intended for the police power exception [codified at 11 U.S.C. § 362(b)(4) ] to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers." *In re Commerce Oil Co.,* 847 F.2d 291, 295 (6th Cir.1988). Thus, as a general matter, § 362 does not stay governmental proceedings to enforce statutes protecting human health and the environment. *Id.* at 295–97; *see, e.g., Lancaster v. Tennessee,* 831 F.2d 118, 122 (6th Cir. 1987) (trustee must comply with applicable environmental law). As bankruptcy is not intended to be a safe haven from compliance with regulatory requirements generally applicable to the ongoing operations of a debtor, the compliance obligations of operating debtors include adherence to bonding an financial assurance requirements imposed by laws generally applicable to the business of the debtor. *See Gillis v. California,* 293 U.S. 62, 63–67, 55 S.Ct. 4, 79 L.Ed. 199 (1934) (citing Judicial Code § 959(b)'s statutory predecessor as support for requiring Court-appointed receiver to obtain surety bonds required by state law to guarantee payment of gas taxes); *Duffey v. Dollison,* 734 F.2d 265 (6th Cir. 1984) (debtors must comply with financial responsibility requirements for automobile licenses under Ohio law); *Safety–Kleen, Inc. v. Wyche,* 274 F.3d 846, 864–66 (4th Cir.2001) (hazardous waste landfill operator in bankruptcy must comply with South Carolina's bond requirement for financial assurance for closure and post-closure expenses if it wished to continue operating and accepting waste); *Cumberland Farms, Inc. v. Florida Department of Environmental Protection,* 116 F.3d 16, 20–21 (1st Cir.1997) (affirmed bankruptcy court's assessment of civil penalties against debtor-in-possession based on non-compliance with financial assurance requirements imposed by state and federal regulations during bankruptcy).

In granting a preliminary injunction to Appellees, the Bankruptcy Court determined that Appellees had demonstrated the requisite likelihood of success on the merits because the automatic stay would apply to the threatened adverse actions regarding maintenance of reclamation bonds under KRS Chapter 350. *See In re DeLorean Motor Company,* 755 F.2d 1223, 1228 (6th Cir.1985) (stating standard for injunctive relief). Specifically, the Court determined that the police power exception to the automatic did not apply to the adverse actions threatened by Appellants as the reclamation bonding requirements are primarily intended "to preserve the private rights and interests of Kentucky as a potential creditor of Lodestar and not to effectuate a public policy" and that "[t]he adverse actions are pecuniary in nature and not being undertaken to effectuate public policy." Appellants believe that the Bankruptcy Court misapplied *Chao v. Hospital Staffing Services, Inc.,* and *In re Technologies International Holdings, Inc.,* and should have reexamined its holding in light of the Fourth Circuit Court of Appeals' decision in *Safety–Kleen, Inc. v. Whyche. See Chao,* 270 F.3d 374; *In re Technologies International Holdings, Inc.,* 234 B.R. 699 (Bkrtcy.E.D.Ky.1999); *Safety–Kleen, Inc.,* 274 F.3d 846.

■ To evaluate the reach of the bankruptcy stay where the police power exception would otherwise apply, a court must apply the pecuniary purpose test and determine whether the intended action is to give effect to a public policy or to protect the government or a third party's pecuniary interest. *Chao,* 270 F.3d at 385–86; *In re Commerce Oil Co.,* 847 F.2d at 295–96 (state's action for injunctive relief, remedial measures, recovery of remedial costs of damage to environment, and to fix amount of civil penalty liability was within police and regulatory exception because

not primarily designed to protect pecuniary interest). This test is described in *Chao* as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay.[5]

*Chao*, 270 F.3d at 385.

■ In the instant matter, the Court is not convinced that proceedings pursuant to the reclamation bond requirement represent a protection of the government's pecuniary interest in the debtor's property rather than a concern with matters of public safety.[6] While it may well be that the effect and even a purpose of the bonding requirement is to ensure that funds will be available for reclamation of land mined in the Commonwealth, securing through third party sources Lodestar's unsecured, unliquidated contingent reclamation obligations to the Commonwealth, the Court is not convinced that the bonding requirement serves a primarily pecuniary end.

As the Bankruptcy Court has applied *Chao's* pecuniary purpose test, the automatic stay could apply in every situation where the legislature seeks to shift the risk and cost associated with failing to comply with environmental or other regulations that serve the interest of the Commonwealth, i.e., the people of Kentucky, to regulated entities by virtue of bonds or other methods. If this Court were to affirm the decisions made by the Bankruptcy Court and accept the logic set forth by Appellee in this matter, it could set an unfortunate precedent not only with regard to the application of the automatic stay to enforcement of reclamation bonding requirements under KRS Chapter 350, but also its application to many more regulations wherein bonding is used as an incentive to comply with the law.

Appellees admit that the overall scheme of chapter 350 is underpinned by sound environmental policies, seeking to "insure that satisfactory reclamation is accomplished."[7] That reclamation is dependent

---

5. *Chao* actually proposes a two part inquiry with regard to enforcement suits against bankrupt parties, explaining that:

> [W]hen the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly where a successful suit would result in pecuniary advantage to certain private parties *vis-a-vis* other creditors of the estate, contrary to the Bankruptcy Code's priorities.

*Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 390 (6th Cir.2001). This is to say that upon a determination that the proceeding would be otherwise be excepted from the automatic stay, a court should also proceed to consider whether there exist "peculiar circumstances" in which the state undertakes a particular enforcement action "not in furtherance of public policy but primarily to assert and protect the private rights of certain individuals." *Chao*, 270 F.3d at 382. As this portion of the test has not been considered in this matter and is not presented in this appeal, the Court shall consider it no further.

6. Certainly, the state does not stand to gain an ownership interest in the permittee's property by virtue of the reclamation bond requirement. The Court sees no evidence to support Appellee's claim that a mine would escheat to the state upon a failure to properly reclaim or rehabilitate the land. Rather, as Appellants describe the situation, any damage and the expenses associated with remedying that damage to the land on which the mine is located could be said to "escheat" to the state. This does not suggest the type of pecuniary interest required under *Chao*.

7. The legislature recited the following dangers posed by unregulated surface coal mining operations where land is not properly reclaimed and rehabilitated:

upon adequate funding, which the bonding requirement seeks to secure in an amount directly proportionate to the estimated future costs of reclamation, does not dispositively suggest a pecuniary goal for the requirements. 405 KAR 10:050. Rather, the Court finds that the argument that bonding requirements represent only a "cost-covering" effort ignores that a law provides the means for meeting certain ends—in this matter, the stated public policy behind the surface mining bonding requirements.

A financial assurance requirement provides an "obvious...incentive for safety" because "the availability and cost of a bond" is tied to how an operation is conducted. *Safety–Kleen*, 274 F.3d at 866. The Court remarks that while the bonds themselves will not hold back the rolling stones and overburden with which the General Assembly was concerned, they serve as an incentive in the overall legislative scheme to encourage proper reclamation and rehabilitation of land subject to surface mining in the Commonwealth.[8] Here, the bond requirements provide an

incentive to conduct mining operations so as to minimize the reclamation costs and risks against which bonds are issued, deterring sloppy or ineffective operating plans and practices in order to keep bonding costs low. Under the Kentucky Surface Mining Program, in addition to the financial incentive inherent in avoiding bond forfeiture, a forfeiture would also mean that the permittee would have to discontinue its mining operations. If the Cabinet is forced to forfeit a bond in order to obtain reclamation upon a permitted site, the permittee is barred from obtaining any further permits in the Commonwealth. *See* KRS § 350.130(3).

Thus, while the Commonwealth's reclamation bonding requirements would provide the funds to reclaim the disturbed land if the permittee cannot or will not do the work, the Court is not convinced that the sole purpose of the bonding requirement is to cover those costs. Rather, it serves the purpose of protecting the citizens of the Commonwealth against the dangers posed by land that is not reclaimed and proceedings to enforce the

...soil erosion, damage from rolling stones and overburden, landslides, stream pollution, the accumulation of stagnant water and the seepage of contaminated water, [the] increase [in] the likelihood of floods, [the destruction of] the value of land for agricultural purposes, [the destruction of] aesthetic values, [the] counteract[ing of] efforts for the conservation of soil, water and other natural resources, [the destruction] or impair[ment of] the property rights of citizens, [the creation of] fire hazards, and in general [the creation of] hazards dangerous to life and property, so as to constitute an imminent and inordinate peril to the welfare of the Commonwealth.

KRS § 350.020. Thus, the General Assembly stated as its purpose in enacting the reclamation provisions in Chapter 350 "[to] provide such regulation and control of surface coal mining operations as to minimize or prevent injurious effects on the people and resources of the Commonwealth." *Id.*

8. While it is clear that the Fourth Circuit Court of Appeals decision in *Safety–Kleen v. Wyche* is neither necessarily persuasive nor controlling authority, this Court does not believe that the application of *Chao* in the instant matter requires the opposite result, as Appellees suggest. In fact, the distinction urged by Appellees between bonds issued in *Safety–Kleen* and those required under the Kentucky Surface Mining Program, is inappropriate. The *Safety–Kleen* bonds were required to "secure the costs associated with [a landfill's] closure and post-closure maintenance" and the landfill could avoid the forfeiture of its bond through environmentally sound containment and management practices that would limit the necessary work to secure the facility upon its closure. *Safety–Kleen, Inc. v. Wyche*, 274 F.3d 846, 856 (4th Cir.2001). Thus, the "incentive" rationale described in *Safety–Kleen* is hardly the opposite of the "cost covering" rationale proposed by Appellees in the instant matter.

bonding requirements are not subject to the automatic stay.[9]

## C. TEMPORARY INJUNCTION

A court abuses its discretion when it applies "an inappropriate legal standard . . . or improperly applies the law . . . ." *Sandison v. Michigan Sch. Athletic Assoc.*, 64 F.3d 1026, 1030 (6th Cir.1995). As Appellees have not demonstrated a likelihood of success on the merits in this regard, the Bankruptcy Court abused its discretion when it granted a preliminary injunction to the Appellees.

## IV. CONCLUSION

For all of the reasons stated above, this Court has determined that the Bankruptcy Court erred when it decided that Appellants' enforcement of the reclamation bonding requirements under KRS Chapter 350 would violate the automatic stay and abused its discretion in determining that a preliminary injunction of such proceedings would be appropriate.

Accordingly, **IT IS ORDERED:**

(1) that this Court's order to show cause [Record No. 11] is **DISCHARGED;**

(2) that the Bankruptcy Court's determination that Appellants' enforcement of the reclamation bonding requirements under KRS Chapter 350 would violate the automatic stay and its decision to grant a preliminary injunction of such enforcement are **REVERSED;** and

(3) that this matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

---

9. The Court also remarks that Appellees have continued mining under their permits post-petition and that, as a result, their reclamation obligations are on-going. Thus, an attempt to enforce the reclamation bonding obligation could not be necessarily barred as a pre-petition claim upon which the Cabinet would need to file a timely Proof of Claim.